The next matter before the Court is Commonwealth of Pennsylvania v. Susquehanna Area Regional Airport Authority. Mr. Donoghue. Thank you, Your Honor. My name is James Donoghue. I represent the Commonwealth in this matter. And I'd like to reserve two minutes of my time for... Before... Why don't you stop the clock for a second. Before you start, could you tell us what is going on in the Court of Common Pleas in Dauphin County? What the action... Are you involved in that action? Yes. The condemnation action. Can you tell us where it stands both procedurally and legally? What are the matters that are being raised before that Court? There's two matters before that Court. One is the petition for the writ of condemnation, in which case preliminary objections have been filed in response to that by the condemnee. And we filed a motion to intervene in that proceeding. That motion was actually never granted. And then in September... I'm sorry, in August of last year, when we could file that action and then preliminary objections, which are the statewide equivalent of the motion dismissed, were filed. Those preliminary objections were briefed and they were decided over the... Between Christmas and New Year's. And then there was a petition filed by the Airport Authority to appeal that, to have an interlocutor to appeal that decision. That then was briefed and that was decided against the Airport Authority. Now this is on the antitrust action? On the antitrust action. And so where does that stand right now? And the Court has issued an order saying that for purposes of discovery and hearing, the two matters will be consolidated. So now we would be in the process of discovery. We assume that at some point in the near future, the Court is going to order a scheduling conference. So they're both before one common pleas judge? Yes, they're before the same judge. And the public use issue is before the Court in both of those actions? The public use is before the Court in both of those actions, although the airport maintains that the only issue that needs to be decided in the condemnation proceeding is the value of the property. All right. Or the difference in the value of the property. But you've raised the public use issue? Yes, as has the condamnee. They've raised it as a form of preliminary objection. And citing Kelo and other cases? Well, citing Pennsylvania state law. I don't recall whether they cited Kelo in their briefing. Actually, their briefing was done before the Kelo decision came down. This case, the writ of condemnation was filed on March 30, 2005. There was, I think, 30 days to file preliminary objections. And then there was briefing on that. And I think most of the briefing had occurred before Kelo's decision came down in late June of 2005. And is that a jury trial demanded on both issues, on both cases? No, because the antitrust case would purely be an injunctive action. There could be a resort to a jury just on the value of the property, I think. I'm not 100% sure. I'm not at that point. But the rest of the objections would be purely judge decided. They wouldn't be decided by a jury. Clarify for me. Is the issue of public use before the Commonwealth Court? It's in the court completes of Dauphin County. No. Yes. If that has to be decided, if there's no public use, there's no need to talk about market value. Is that right? Yes, yes. If there's no public use, yes. They have raised the objection in that they have—if the court were to decide that— The condominium has raised the objection. The condominium has raised the issue. We have filed a similar state law antitrust complaint, a Commonwealth antitrust complaint, which raises essentially the same arguments we've raised in our federal law complaint. Where does a party take an adverse ruling in the Court of Common Plaintiffs? Is that the Commonwealth Court? I believe it would be the Commonwealth Court because the adverse party is the government agency. Okay, good. Thank you very much. You're welcome. I may have misstated some of the timing and that sort of thing, but I don't have the doc in front of me. All right. Well, I'm sure your friend on the other side will help us. We'll correct any— May it please my court again, my name is James Donahue. I represent the Commonwealth in this action. We're here today to talk about a condemnation proceeding commenced by the Subsequent Area Regional Airport Authority and whether that condemnation proceeding can result in a violation of the antitrust laws when the condemnation is used to take the airport's only competitor in the airport parking business. The starting point in the state action analysis involving municipalities is whether the state has a clearly articulated policy to replace competition with regulation. The policy established by the state here is that unequivocally, municipal authorities have a proprietary function. They don't perform a regulatory function. What I mean by that is if you look at the statute, the Municipality Authorities Act, there are numerous powers that are granted to municipal authorities, but they concern owning property and that sort of thing. They don't concern holding hearings. They don't have any licensing authority. They don't determine the pricing that anybody else in a marketplace has. They have no control over who participates in a market or who can enter a market or do anything like that. There is no regulatory grant from the Municipal Authorities Act to municipal authorities. They serve a purely proprietary function. And this raises a very important issue in this case, and that is whether this municipal authority is a market participant. There's been a lot of discussion in the case law involving the state action doctrine about whether there are market participants. Whether market participants, when they're government agencies, should be treated differently than when they're market participants, or when government agencies are acting in a regulatory function. So if you look at the fundamental question here, is the authority acting as a market participant here, or are they acting as a regulator? The district court never even addressed these issues. Well, the district court said that because the Supreme Court had talked about the market participant exception in the Omni outdoor advertising case, and this court talked about the market participant exception in the Bedell case, which actually involved our office, but there was no case on point which said, yes, there is a market participant. But if you look back at the case law involving the Commerce Clause, there's plenty of case law, going back quite a bit of time, where there have been Commerce Clause challenges to various state actions. And when the state has been a market participant, there hasn't been the Commerce Clause prohibition against discriminating against out-of-state business and that sort of thing hasn't applied. I think the example here that might be most relevant is the Reeves case, Reeves v. State, I think is the case, which involves South Dakota's effort to sell cement. In that circumstance, the court said, they're really a cement producer. They're not a government agency, and they can do what they can, just like anybody else can go and sell cement to whom they choose. And they actually referenced in that case the sort of general antitrust rule that a seller in a market is free to choose the buyers of their products with certain constraints when they're a monopolist and that sort of thing, which wasn't the case there. So there's plenty of jurisprudence out there in the Commerce Clause that says when a state acts as a market participant, different rules apply. The same thing, I suppose, would be true if you were talking about, at least from New Jersey, the New Jersey Turnpike Authority. I don't know if Pennsylvania has a Pennsylvania Turnpike Authority, or the Port Authority of New York and New Jersey, or Delaware Bridges and Tolls. I mean, your concept would seem to apply to quite a few state agencies, and they would all, therefore, be proprietary agencies in New York theory. Am I correct about that? In this case, I'm referring to the specific grant of authority from the Municipal Authorities Act. Would that be a grant of authority to condemn property? Yes, there is a grant of authority to condemn property. I'm sorry, go ahead. I just want to finish the answer to Judge Whitey's question here. If you look at the different types of authorities have different granting authorities. One of the cases cited in the appellee's brief involves the Port Authority of Allegheny County. In that case, the statute which grants Port Authorities the ability to operate says they have control over transportation within their jurisdiction, which in that case was a county. It does grant them a regulatory type authority. Now, I don't know whether the authorities for the legal structures that created the Port Authority of New York or the New Jersey Turnpike Authority have some sort of limitation that says they will control all access to the ports or something like that, or who can operate the ports. I don't know about those statutes. What would be the minimum requirements? In other words, so long as a state statute authorizes an agency to condemn property, they're to be deemed proprietary? No. I think the eminent domain is sort of a side issue. The question is what is the authority granted to the agency? Is the authority regulatory or is it proprietary? The general authority granted here to municipal authorities is proprietary, not regulatory. Yes, they have the power of eminent domain. And yes, in some circumstances, the exercise of that power could have a competitive effect. But it may not have a competitive effect on the antitrust laws. Excuse me. Sorry to depress the point, but what is the touchstone? Is it that it's proprietary because it's permitted to condemn property, or is there another way we can determine? The touchstone is state law, which says municipal authorities are proprietary. Pennsylvania has a three-prong test, which determines whether a governmental agency acts in a proprietary or governmental function. And those three prongs are, are they raising revenue? Is it something a private entity could do? And is it something that's optional, not something that's required? So they meet those three prongs. That's what determines whether it's proprietary. But has Pennsylvania case law applied that principle in the eminent domain field and said that you are limited if you are a municipal authority that has some sort of proprietary function, which in this case would be operating parking lots as well as airports, that your powers under eminent domain are thereby restricted? No, there's no Pennsylvania case law that says that your powers under eminent domain... So we're faced with a statute that Judge Fuentes has been talking about and that you've mentioned that seems to give airport authorities the absolute right to condemn as long as it's incidental to the services of the airport. The Commonwealth does give the airport authorities the right to condemn, provided they've got a public purpose for using the condemnation power. And what we've contended here and what we've played in our complaint and the various briefing that we've done is that there's no purpose behind the, no public purpose behind the taking here. And in that circumstance, even though you have a statute that says you've got the ability to use eminent domain, it doesn't give you the ability to use eminent domain on lawful. And I think this is a different situation than the Omni outdoor advertising case. In Omni, there was this allegation that there was some undue influence on the city councilmen in the city of Columbia to pass an ordinance which disadvantaged competing billboard companies. Even if that were true, that there was, even if you bribed a legislator to vote for a bill and the bill passed, the bill would still be law. In this case, if you improperly, if you use the eminent domain power in a way that you're not constitutionally allowed to do, there's not a taking. It's not an authorized government act. It's not an act that really should have state action immunity. See, I think one of the problems here is that by labeling the taking a governmental power, that's overshadowing the general nature of the business here. The general nature of municipal authority is one that's proprietary, not regulatory. Had this been a case, there could be situations where there's a competitive effect from a taking. So you've got a town, they've got two hardware stores. You need to put in a sewage pumping station, and one of them has to be in the perfect place for the sewage pumping station. You take that hardware store. Now you have one hardware store in town. It's a less competitive department. That would be immune because, A, there was a purpose, and also it wouldn't raise an antitrust violation. The sewage authority isn't in the business of running hardware stores. Here you have something different. Here you've got an airport authority that operates an off-site airport parking, regular parking, in competition with an outside vendor, and they've used eminent domain when they have no public purpose to take that vendor's property to get them out of the business. After actually staying, that's one of the reasons they were using the property was to take it. Is this issue one that's going to be decided by the state court? The state court has before it the issue of the public purpose. The parties, the other side contends that it shouldn't be before, that it shouldn't be considering either a state common law antitrust claim, and it shouldn't be considering the public purpose issue in the condemnation proceeding, that really the only issue it should be considering in the condemnation proceeding is the value of the property. Let's assume we agree with your basic thrust here, and we either grant your relief or we send it back to the district court with instructions to look into the matters that you've raised, and the district court finds in your favor. What effect does that have on the condemnation action and the antitrust action? The effect would be, if there was a finding, and I think the effect would be that it would end the condemnation proceeding. I think if the broader question you're asking is, if there are parallel proceedings in state and federal court involving the same issue, should there be coordination of those proceedings? There absolutely should. Is there a process? Should there be abstention? Should there be abstention? Maybe, but that's not the question we have today. The question is whether there may well be a need for abstention, but the question we have today is, is this conduct that they engaged in immune? Does the municipal authority performing a basically proprietary function get immunity under the antitrust laws for a non-regulatory act, in this case an acquisition of a competitor? Another way to look at this is, let's trip away at the domain for a second. If you simply had a municipal authority acquiring its one competitor, absent everything else, it would be challengeable under the antitrust laws. Now, you may say, well, geez, that's kind of small potatoes here, but it's not really small potatoes. There's a case right now, a matter of Rite Aid and Eckerd drugs, and that's going to be about what does a drugstore market look like on a neighborhood-by-neighborhood basis, very small, discrete markets, and there will be some sort of resolution in that matter. Pennsylvania Supreme Court had a case, I think it was the Supreme Court, put five more minutes on this, where a municipal authority operating an airport put the private authority out of business. The case was cited by your opponent. It was taken over and effectively put them out of business. Why doesn't that answer your question? Because fundamentally it's a standing case. What the Supreme Court said in that case was the condominee has no standing to complain about any wrong that he has suffered because they would be compensated for whatever injury they suffered by the payment of money to them. The question under the Parker Doctrine is, is there a clear articulation of a policy to displace competition with regulation? And that case didn't answer that question. The case didn't talk about economic regulation. It didn't talk about economics at all. The case is only six paragraphs. The case is about standing, and it's about who has standing to raise this objection. The court there said very clearly that the airport, the existing airport, the owners of the airport didn't have standing because they were compensated. I am not sure that that meets the requirement under Parker and subsequent cases that have dealt with Parker about indicating a clear expression of state policy to replace competition with regulation. If you look at the statute, if there's any policy at all expressed in the statute, it's the opposite policy. The policy expressed in the statute is to say the municipal authorities shouldn't interfere with existing businesses. They're not in the business of restraining competition. They're intended to increase the value of, they're intended to increase commercial opportunities for Pennsylvania consumers. Can a private citizen stand in your shoes and present the same challenge, public use challenge to the taking? Under state law in a condemnation proceeding? In federal law. Why could not a private citizen present a challenge in federal court? Somebody who uses the parking facilities, Cramer's parking facilities on a regular basis? I don't see any reason why they couldn't. I mean, any private citizen that would be a purchaser of a product and would have a claim in an emergent case could conceivably do that when the attorney general does. We stand in federal court as parents of pet traders. We're standing basically as a private party. We're not the United States Department of Justice or the Federal Trade Commission. We're standing in the shoes as parent and pet trader of the people of the Commonwealth. So the answer to that question would be yes. I wonder if that opens the door a little bit wider than we really should. Well, I don't, you know, I think in generally emergent, this would just be a merger case situation. How many merger cases have been filed by individual consumers to block, where they're a direct purchaser of the products to block the merger? Even in the case of very large companies who are purchasers of products, very rarely do they file suits to block the merger of their competitors. I don't know why it would be any different in these circumstances. I mean, theoretically, if you're a bank customer and your bank is merging with another bank, yeah, I guess you could challenge it on the ground so there'd be some competitive loss to you. But it doesn't happen. But you clearly have standing to do that. Okay. Did you raise the public use argument before the district court? Yes, I think we did. I saw the note in their brief that we didn't. But, you know, in our complaint, we pled that there was no plan for the use of the property. We also pled that they didn't have an agreement with the railroads to move the tracks. They hadn't filed any plans with any municipal entities to get approval for any building permits or any of that sort of stuff. And that was extensively briefed throughout the process in the lower court. And if you look at, I unfortunately have been going off the slip opinion of the district court's case, but if you look at page 18, they talk about this very issue. They talk about whether the fact that we contend that there was no purpose behind the taking has any merit. And the court says that it doesn't. So the court clearly considered it. One last question if you can answer yes or no. The statement that was presented by the authority for the taking, that was presented to the Court of Common Pleas? Yes. Okay. Thank you. Thank you very much, Mr. Feldman. We'll have you back when we vote. Okay. Thank you. May it please the court. My name is Tim Nieman, and I'm here today on behalf of the appellee, the Susquehanna Area Regional Airport Authority. The real question in this case is not whether there was a public use or whether the antitrust laws were violated in this case, but it's whether a federal court, in this case the court sitting in the Middle District of Pennsylvania, through an antitrust argument will interfere with state court proceedings that are properly bought in a state court that are raising the same issues that are being raised here in this case and which are being prosecuted and defended as the case may be down below. The procedure in the state court is specifically dealing with the issues that are raised here in the appellant's case. Is public purpose, public use? Public purpose and public use, Your Honor, are being addressed in both the eminent domain case that's been filed. There's been preliminary objections filed by the owner of the property. In those preliminary objections, there have been allegations that it's not for a public purpose, it's for an improper purpose, it's an unconstitutional taking, and it's a violation of antitrust and competitive doctrines and statutes of the state. Likewise, once the federal court case in the Middle District was dismissed, the Commonwealth Broad State Court federal, I mean, a state court common law antitrust action, which, as Mr. Donohue admitted in his argument, raises the exact same issues as are being raised here. They are the exact same antitrust issues. They are the exact same issues with respect to the basis for the antitrust claim, the public use issues that are being addressed here in their brief and in their complaint. They are all being decided and being considered by a court in Dauphin County, Pennsylvania. Is Craitor's antitrust claim a jury issue, or is that a legal issue? It is a legal issue. There is no jury request in this proceeding, and there can't be. Under the Pennsylvania statute, the eminent domain proceedings are decided by a judge. The first step is for the judge to decide the preliminary objections to the declaration of taking. Those preliminary objections act almost like a complaint, saying these are the reasons why the taking is inviolate. The court will make a decision on those issues. That would include the public purpose, public use? It definitely includes the public purpose, public use arguments. And with respect to the Commonwealth's antitrust action, that also is a non-jury proceeding because all they're asking for is an injunction, an injunction to stop the eminent domain proceedings from going forward. And that was another argument that we actually made before the district court, was that the district court and federal court does not have the power under the Anti-Injunction Act to enjoin state court actions like this. The judge didn't reach it. Judge Conner did not reach that issue because he decided entirely on the state action doctrine. And we also made the Nord-Pennington argument down below as well because, as the court's aware, the petitioning of a governmental entity, including the petitioning of a court by another governmental entity, as was found in the Mariani case, is considered protected speech under the Nord-Pennington doctrine and is granted a privilege as well. And I think what all of those issues suggest and what they show, whether it's the Anti-Injunction Act, whether it's the Nord-Pennington doctrine, whether it's the Parker Immunity State Action Doctrine, is that federal courts are reluctant to get involved in state court actions that somehow impact antitrust concerns. And that is exactly what we have here. And if we were to agree with his argument on state action, state action doctrine, and the market participant exception, why shouldn't we go ahead and decide it on that basis? You're saying that the federal courts should defer to the state courts in this case. That's correct, Your Honor, and I think there's a number of reasons for that. First of all, as the Commonwealth admits in its brief, and as the Supreme Court decision in Omni suggests, that this market participant exception has never been adopted by the Supreme Court. It's been mentioned in other court decisions as a possible exception to the antitrust statutes. Now, I understand in the footnote in your case in Bedall that it is cited there, but, again, it was not actually applied in that case. There are a number of federal circuits that have looked at this and have decided not to adopt it, and there's others that have just sort of pushed around the edges with it a little bit, and I assume that's part of the reason we're here today to see where that may go. But even beyond the fact that it's not a positive rule of law that's been enunciated by either the Supreme Court or any of the circuit courts, I think the big issue is where does it lead to? And, Judge Fuentes, I think you were getting to this a little bit when you were questioning Mr. Donohue, is how far does it go? If you take the Commonwealth's argument to the sort of logical end, any public authority in Pennsylvania, and I assume that it would be the same whether it's in New Jersey or Delaware or wherever it may be, competes in a market. That doesn't mean that they're not acting in a regulatory capacity. That doesn't mean that they're not working in a governmental capacity, but they compete whether it's a port authority, whether it's an airport authority, whether it's a school authority, whether it's a water authority, an electric authority. Any type of authority that provides some sort of service is arguably then subject to federal antitrust review every single time it takes an action, every single time it does something. I would even go as far to suggest that the court could be subject to antitrust review because there's now private arbitrators and mediators and public parties that can do the same function as a court that might say, well, there should be a fee paid by participants so that they can avail themselves of these services. These individuals, of course, serve a public purpose. But the question is, what public purpose have you established? You seem to say that you're taking over this property simply because you want to fulfill your function, which doesn't sound like very much of a public purpose. I mean, if that is the public purpose, you literally can take all the land around the airport within a 50-mile radius and use the same purpose. But is that really satisfying public purpose, sufficient to shield you from antitrust? Well, Your Honor, I think that's an issue that's going to be decided in the state court. I mean, that is the whole purpose of the eminent domain procedures in the Pennsylvania statute is to determine whether or not the taking was justified, whether it was for a public purpose, whether it was lawful or unlawful. And that is going to be decided down there, and that is the proper place to have that decided. You seem to be arguing that these are parallel proceedings, the same issue in the federal court, the same issue in the state court, as to public purpose at least. That's correct, Your Honor. Did you ask the court to abstain? At the time that we filed our motion to dismiss, the Commonwealth's antitrust action had not been filed at that point. What about the eminent domain action? The eminent domain action had been filed. We did not ask to abstain at that point, but we did argue the Anti-Injunction Act, which prohibits a federal court from enjoining the proceedings in a state court. And we believe that if this case were to even go back to the district court, that it would be dismissed again either on the North Pennington Doctrine or on the Anti-Injunction Act in this case. And in addition, now that there is this exactly the same proceeding in the state court on the antitrust issues, which are the only issues that are raised in the complaint of the plaintiff, the Commonwealth in this case, that there also should be abstention in this case as well. Now, with respect to the whole issue of whether or not this was for a public purpose and the rationale for it. Excuse me. Sure. I just want to make sure I understand the anti-injunction point. Let's assume that there were a valid claim under the antitrust laws. Something that you might agree with. Why would an injunction against the party, against the condemn nor, be a violation of the Anti-Injunction Act? The Anti-Injunction Act. If it were a valid federal claim. Correct. Your Honor, I would point you to the Los Angeles Raiders, the Oakland Raiders case from I believe that's in California. I believe that was a Ninth Circuit case. And they dismissed an antitrust claim on this very basis that it was seeking to enjoin a state action condemnation. And what the Anti-Injunction Act plainly states is that a court in the United States may not grant an injunction to state proceedings in a state court. Except it was expressly authorized by act of Congress or were necessary in aid of its jurisdiction or to protect or effectuate its judgments. Now, we haven't briefed that in this case here because the court below did not decide that issue. Though it was briefed below. And it is our position, Sarah's position, and I believe it's supported by the case law and the statutes. In this case, even if there was a violation of the antitrust laws, the court cannot enter an injunction to enjoin those lower court proceedings. And on top of that, there is a lower court proceeding that is addressing the very same exact issues as have been raised in this federal claim. In establishing public purpose, do you not think there should be some level of specificity as opposed to a statement that merely restates your mission? Sure, Your Honor, that may be. And that is what the state court will decide. The state court will look behind that and the parties will be required to put on evidence. Sarah will put on evidence as to why there is a public purpose, what the public purpose is. The other side, including the Commonwealth, as the case stands now, will put on evidence to the contrary as to why they think there is not a public purpose. But even beyond that, if you look at the case law with respect to the state action doctrine, the cases are pretty clear that even if there is some sort of fraud involved in the reason for why there's an anti-competitive, an antitrust violation, even if there's some improper purpose, some improper motive, that the courts have said they will not get involved in that. They will not look behind that and they will let other proceedings, whether it's a federal prosecution, a state prosecution, or in this case, a state eminent domain proceeding, an antitrust proceeding, to determine that very issue. Basically, what these cases say, what these statutes say, whether it's Noor-Pennington, whether it's anti-injunction action, whether it's the Third Circus jurisprudence or the Supreme Court jurisprudence on the whole issue of the Parker immunity, is that the federal courts are not going to get involved in these kinds of cases. And that's even stronger in cases just like this, where there is a state court proceeding, there is some other avenue for the person or the party to get relief. And in this case, both Mr. Kramer, who owns the property, has availed himself of the state procedure to try to get relief in this case, and the Commonwealth has been allowed to file the exact same complaint in state court. But it's almost identical word-to-word to try to also avail itself of the state court proceedings, the state court procedure, to try to vindicate its concerns with the anti-competitive or the alleged anti-competitive allegations in this case. I think I cut you off on your response to the question about abstention. Obviously, you would like us to affirm the order to dismiss based on the fact that there's no finding that there's no liability or there was immunity from federal antitrust actions. But if we didn't agree with that, I assume, and if any of your other arguments didn't prevail, I assume you would want us to abstain pending the outcome of the state action. Am I correct? I think that would be one of our arguments, Your Honor. But I think even beyond abstention, I still think there's other bases, that even if you didn't agree with the Parker immunity holding of the lower court, there are other affirmative bases that would call for a dismissal of the case, as opposed to just abstention, waiting to see what happened below. And if we were to abstain, what would be the basis for abstention? Do you know? I realize... Yeah, I've not... It's been a long time since I took federal courts in law school. So this was not really litigated? It was not, Your Honor. But on my just sort of general basis as I stand here today, I think by virtue of the fact that there is the same case proceeding in a state court, that the federal courts will generally abstain in those situations as a matter of comity and federal practice. Let me put the same question a little bit differently. Suppose we decided to defer submission of this case, pending the resolution in the state court proceedings of the public use question. And let's suppose that the state court decided that issue against you and your party. What would be our duty then? Your duty then would be to do nothing, because if the public use is decided against my client in this case, the condemnation is over. And I would think that because the Commonwealth is only seeking to enjoin that condemnation, that their case would be over, and that would include their antitrust case in the state court, as well as their antitrust case in this court. So, I mean, I really think that that's just further evidence as to why this case should just be dismissed and allow the state court action to take its course. I take it you would give me a similar answer if I said, suppose the state court ruled against the state, and we deferred submission. What should we do after receiving that word? Well, I think at that point in time, then there would be an affirmation by another court that had been fully litigated. There would be collateral stopover and judicata issues with respect to that, and that would probably be binding on a district court as well. The bottom line is, I see my time's up. Give me five more minutes. Okay. I believe the bottom line in this case is that the federal courts, historically, whether it's through statute or case law, have avoided getting involved in these types of cases, and it's for that very reason. The state court can make that decision. The state court's decision will be binding on the parties, whether it's here or somewhere else, and it's fully capable to make the decision. And especially here where not only do you have the condemnation proceeding where the owner of the property is making the same arguments, but you have the very party that's arguing here on the other side, the commonwealth, that's making the same arguments down there as well in the same context. It's just before a different forum. And in that type of case and that type of situation, and based upon the precedence of the Supreme Court, this circuit, and the statutes, it's proper for this court to dismiss the case on Parker, to uphold the lower court, and to let the state court make a decision on this very state issue. It's sort of a natural, traditional state issue that we're dealing with here. Any other questions? Mr. Niemann, thank you very much. Thank you. Mr. Donahue. Thank you, Your Honor. I just want to talk about a couple things that have come up. The issue of the state court proceeding seems to be very important, and why should there be any sort of decision, even though there's this ongoing state court proceeding, or should there be some waiting until the state court comes out? I think in terms of the legal question here today, which is whether there was an adequate delegate or whether there was a policy by the state to replace competition with regulation, that question isn't affected by the state court proceeding, and that's a question that needs to be answered. In terms of procedurally what should happen after that question is answered, then I think I'm in agreement for judicial economy. This case shouldn't be litigated twice. It should be litigated once in either the federal forum or the state forum, and that can be sorted out at some point down the line. Whatever happens first should be binding on everybody participating in the proceeding, so it's not like there will be a... I'm not advocating that there should be relitigation of the same issues in more than one forum. We haven't yet had a first determination on public use, though, have we? Pardon? We have not had a determination by either court on the public use. No, we have not, Your Honor. Mr. Neiman seems to say that if your view prevails every time there's a condemnation by a state municipal authority, we're going to be seeing federal antitrust issues that we're going to have to decide because federal suits are going to be brought, and that we're simply going to transform what is essentially a state proceeding into a federal proceeding. First off, the causes of action we brought allege Section 2 violation, monopolization, and as claimed in Act Section 7, 15 U.S.C. Section 18, both of those actions say the actor has engaged in conduct which results in there being a monopoly or a restraining competition. So most of the time that a school board or something like that goes out and buys something, they're not buying it from a competitor. They're not buying a competitor. They're buying pencils. They don't have any sort of great influence in the pencil market or the paper market or the book market. They're not having a competitive effect that is actionable under the antitrust laws. There's plenty of times where government agencies go out and buy stuff, and government agencies are the biggest buyers of rock and asphalt and cement and that sort of thing, but they're not in those businesses. So the fact they've used eminent domain to buy land so they're going to build a road, that doesn't have an actual competitive effect. Maybe they have taken the one gas station in town or they've done something that has a tangential competitive effect, but that competitive effect isn't actionable under the antitrust law. Any other questions? No. Good. Mr. Donahue, thank you very much. We'd like a transcript made of the oral argument and for both parties to share the cost of that. If you would check with the clerk's office before you leave, they'll tell you how to do it. Okay. Thank you. It was well-argued. Thank the lawyers. We'll take the matter under advisement. Thank you very much. Thank you. Steve Harris. Report is here to adjourn until Monday, May 7th, at 10 a.m.